**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KERWINN CROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-00972 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| EVARISTO AGUINALDO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Kerwinn Cross began experiencing pain in his lower abdomen and testicles in June 2017, while incarcerated at Stateville Correctional Center ("Stateville"). In July, Cross saw Defendant Evaristo Aguinaldo, M.D., who provided no treatment but told Cross to return if the pain continued. Over the next several months, Cross saw numerous doctors and other medical professionals at Stateville, but he claims that they failed to treat his pain adequately. As a result, Cross has filed this civil rights lawsuit under 42 U.S.C. § 1983 claiming deliberate indifference to his serious medical condition. Presently before the Court is Dr. Aguinaldo's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, in which he claims that Cross failed to exhaust his administrative remedies before filing this suit. (Dkt. No. 40.) For the reasons provided below, Dr. Aguinaldo's motion is granted.

## BACKGROUND

Dr. Aguinaldo urges the Court to grant his motion based on Cross's failure to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") provides that an inmate may not bring § 1983 claims concerning prison conditions in court until he has first exhausted all available administrative grievance procedures. 42 U.S.C. § 1997e(a). The Seventh Circuit takes a

"strict compliance approach to exhaustion." *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006)). To fully exhaust his administrative remedies, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (internal citations and quotation marks omitted). At all times relevant to the present motion, Cross has been incarcerated at Stateville, an Illinois Department of Corrections ("IDOC") facility. (Second Am. Compl. ("SAC") ¶¶ 1–2, Dkt. No. 29;[1] Def.'s Statement of Undisputed Material Facts ("DSOMF") ¶¶ 1–2, Dkt. No. 42.) Therefore, the Court will review the IDOC administrative grievance procedure before recounting Cross's efforts to exhaust his remedies. For purposes of the present summary judgment motion, the Court construes any disputed facts in the light most favorable to Cross as the nonmoving party. *See Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

## I.      IDOC Administrative Grievance Procedure

The parties agree that Title 20, Sections 504.800–504.870 of the Illinois Administrative Code govern the administrative grievance procedure for inmates at Stateville. (Mem. in Supp. of Summ. J. Mot. at 3–4, Dkt. No. 41; Mem. in Opp'n to Summ. J. Mot. ("Opp'n") at 4, Dkt. No. 47.) In most cases, an inmate must submit his grievance to his institutional counselor within 60 days of the incident it references. Ill. Admin. Code tit. 20, § 504.810(a) (2003). If that attempt at resolution fails, the regulations direct the inmate to send his written complaint to a grievance officer. *Id.* § 504.810(c). The complaint shall provide factual details about the incident, including when and where it happened and the names of the people involved. *Id.* If the prisoner does not know an individual's name, he "must include as much descriptive information about the

---

[1] On March 14, 2019, Cross submitted both his SAC and a corrected filing of his SAC. (*See* Dkt. Nos. 28, 29.) For the purposes of Defendant's present motion, the Court considers the corrected SAC.

individual as possible." *Id.* The grievance officer then reports his or her findings to the Chief Administrative Officer ("CAO"), generally the prison warden, "within two months after receipt of the written grievance, when reasonably feasible under the circumstances." *Id.* § 504.830(e). The CAO makes his or her decision based on the grievance officer's findings and advises the inmate of the outcome in writing. *Id.* The prisoner may appeal the CAO's decision to the IDOC within 30 days. *Id.* § 504.850(a). Based on the findings of the IDOC's Administrative Review Board ("ARB"), the IDOC Director shall issue a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* § 504.850(b)–(e).

Alternatively, an inmate may submit an emergency grievance directly to the CAO to be handled on an expedited basis. *Id.* § 504.840(a)–(b). But a grievance only constitutes an emergency if "there is a substantial risk of imminent personal injury or other serious or irreparable harm" to the prisoner. *Id.* § 504.840(a). If the CAO determines there is no emergency, he or she informs the prisoner in writing to resubmit the grievance through the standard procedure. *Id.* § 504.840(c).

## II.     Cross's Efforts to Exhaust his Administrative Remedies

On July 3, 2017, Cross saw Dr. Aguinaldo about a pain in his lower abdomen and testicles. (SAC ¶ 9.) Dr. Aguinaldo declined to treat Cross that day, instead asking him to return if the problem persisted. (*Id.*) Between July 2017 and August 2018, Cross returned to see Dr. Aguinaldo and other medical professionals under Dr. Aguinaldo's supervision about his ongoing pain on at least six occasions, but he alleges that he never received adequate treatment. (*Id.* ¶ 10.) During that time, Cross submitted a total of five grievances to Stateville administrators concerning his treatment.

On October 15, 2017, Cross filed two very similar grievances—one as an emergency and one as a nonemergency—explaining that a Stateville physician's assistant had told him at a recent appointment that based on his test results, Dr. Aguinaldo should have been providing him treatment for kidney stones (the emergency and nonemergency grievances, together, "October 2017 Grievances"). (DSOMF, Ex.2 at ARB000034–37, Dkt. No. 42-2; Pl.'s Resp. to Def.'s Statement of Material Facts ("PRDSOMF") ¶¶ 9–10, Dkt. No. 48.) When a CAO returned the emergency grievance as a nonemergency, Cross submitted it to a grievance officer in the normal manner. (PRDSOMF ¶ 9.)

Before he had received a grievance officer's responses to his October 2017 Grievances, Cross filed another emergency grievance on December 25, 2017 ("December 2017 Grievance").[2] (PRDSOMF ¶ 11.) Cross complained that Dr. Aguinaldo had again refused to treat his medical issue, which Cross believed to be kidney stones. (DSOMF, Ex. 2 at ARB000043–44.) A CAO denied the December 2017 Grievance as a nonemergency. (PRDSOMF ¶ 11.) But instead of resubmitting it in the normal manner, on January 8, 2018, Cross sent it directly to the ARB. (*Id.*) The ARB informed Cross that it would not review his December 2017 Grievance until he had received responses from both his counselor and a grievance officer. (*Id.*) Cross has not pointed to any evidence suggesting that he did so.

On January 30, 2018, a grievance officer recommended denying Cross's October 2017 Grievances, and on February 5, 2018, a CAO concurred and denied them both. (Def.'s Resp. to Pl.'s Statement of Additional Material Facts ("DRPSAMF") ¶ 8, Dkt. No. 50.) Cross filed his original complaint in this case that same day, February 5th. (*See* Dkt. No. 1.) Several days later, on February 8th, Cross appealed the denial of his October 2017 Grievances to the ARB.

---

[2] The December 2017 Grievance also addressed a medical problem Cross was having with his ear, which forms the basis of another pending case in this District, *Cross, Sr. v. Pfister*, 17-cv-07654 (N.D. Ill.).

(PRDSOMF ¶ 9.) The ARB formally responded on March 27, 2018, denying his grievances based on its finding that prison administrators had handled Cross's issue appropriately. (*Id.*; DSOMF, Ex. 2 at ARB000032.)

Cross submitted another emergency grievance on June 25, 2018, this time identifying a "Dr. O" who had refused to treat him ("June 2018 Grievance"). (PRDSOMF ¶ 6; DSOMF, Ex. 2 at ARB000012.) After a CAO denied the June 2018 Grievance as a nonemergency, Cross submitted it through the standard procedure on July 10, 2018. (PRDSOMF ¶ 6.) Then, on August 20, 2018 while awaiting a response to his June 2018 Grievance, Cross submitted a nonemergency grievance explaining that he had been experiencing abdominal and testicular pain for over a year, but that no doctor would help him ("August 2018 Grievance"). (PRDSOMF ¶ 7; DSOMF, Ex. 2 at ARB000015–16.) Cross appealed the denial of his August 2018 Grievance to the ARB on November 30, 2018, and received a formal denial on December 10th. (DSOMF, Ex. 2 at ARB000013–14.) On January 31, 2019, a grievance officer denied Cross's earlier June 2018 Grievance. (*Id.* at ARB000011.) Cross again appealed to the ARB and received a formal denial on February 26, 2019. (*Id.* at ARB000010; PRDSOMF ¶ 6.)

## DISCUSSION

A party is entitled to summary judgment under Rule 56 only if it points to materials in the record showing there is no genuine dispute as to any material fact and that it is entitled to judgment in its favor as a matter of law. Fed. R. Civ. P. 56(a)–(c). Here, Dr. Aguinaldo as the moving party has the initial burden of showing that there is no genuine dispute and that he is entitled to summary judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If Dr. Aguinaldo meets that burden, Cross as the nonmoving party must

produce specific facts showing that there is a genuine dispute that needs to be adjudicated at trial, and that a trier of fact could find in his favor. *Id.*

Dr. Aguinaldo has moved for summary judgment based on Cross's failure to exhaust his administrative remedies as required under the PLRA. The exhaustion requirement is intended to provide prison administrators the opportunity to take corrective action to resolve disputes and reduce the number of cases brought in federal court. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). "[E]xhaustion is a precondition to the filing of a complaint in federal court." *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002). Thus, the district court must resolve disputes about a plaintiff's failure to exhaust administrative remedies prior to looking at any other issues in the suit. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999).

Exhaustion is an affirmative defense, and therefore, Dr. Aguinaldo as the Defendant bears the burden of proving that Cross did not exhaust his administrative remedies. *Brengettcy*, 423 F.3d at 682. Dr. Aguinaldo initially argued that Cross failed to exhaust in two ways: first, by filing his lawsuit before completing the administrative grievance procedures; and second, by failing to name, identify, or otherwise describe Dr. Aguinaldo in his grievances. Dr. Aguinaldo has since conceded that Cross's grievances properly identified him, so the Court need not address his latter argument. (Reply in Supp. of Summ. J. Mot. at 2, Dkt. No. 49.)

Because exhaustion is a precondition to bringing a lawsuit, "it is not enough for a prisoner litigant to meet this requirement after filing." *Mlaska v. Shah*, 428 F. App'x 642, 645 (7th Cir. 2011).[3] Cross filed his initial complaint in this case on February 5, 2018. (*See* Dkt. No. 1.) Thus, the Court must limit its exhaustion analysis to the administrative complaints Cross submitted prior to that date—his October 2017 and December 2017 Grievances. The Court finds that Dr.

---

[3] *Mlaska* is an unpublished Seventh Circuit order issued after January 1, 2007. Although not precedential, the facts of the underlying case are very analogous to Cross's circumstances, and the Court finds the decision's reasoning persuasive. *See* Fed. R. App. P. 32.1(a); 7th Cir. R. 32.1(b).

Aguinaldo has presented sufficient evidence, which Cross has not rebutted, that Cross failed to exhaust his administrative remedies before filing this lawsuit.

First, the Court addresses the October 2017 Grievances. Cross received the initial denial of his October 2017 Grievances on January 30, 2018, approximately one month later than the regulations instruct. (DRPSOMF ¶ 10); *see also* Ill. Admin. Code tit. 20, § 504.830(e) (2003) ("The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ***within two months*** after receipt of the written grievance, when reasonably feasible under the circumstances."(emphasis provided)). Cross contends that the prison's untimely response rendered the administrative process unavailable to him. (Opp'n at 4–7.) He cites numerous Seventh Circuit and Northern District of Illinois cases that purportedly support this assertion. However, in all the cases Cross cites, the plaintiffs who brought their lawsuits in federal court had never received a response to their grievances.[4] By contrast, Cross received a response to the October 2017 Grievances days ***before*** he filed his original complaint in this case. The prison's response was late, but the Seventh Circuit has rejected the argument that even immediately after the deadline to respond to a grievance has

---

[4] *See Dole*, 438 F.3d at 804 (reversing dismissal for failure to exhaust when the prisoner filed his suit more than a year after the ARB's response to his appeal was due and never provided); *Brengettcy*, 423 F.3d at 682 (holding that defendants were not entitled to summary judgment based on failure to exhaust when the prisoner filed his lawsuit five months after he submitted his first grievance and had still received no response); *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002) (reversed and remanded dismissal as to one claim because the district court had not considered whether the prisoner's numerous unanswered grievances, submitted more than a year before he filed his suit, exhausted his remedies); *McNeal v. Cook Cty. Sheriff's Dep't*, 282 F.Supp.2d 865, 867–68 (N.D. Ill. 2003) (declining to dismiss for failure to exhaust when the plaintiff filed his initial complaint at least four months after submitting his grievance and had received no response); *Barrera v. Acting Exec. Dir. of Cook Cty. Dep't of Corr.*, No. 03-cv-1926, 2003 WL 21976753, at *3 (N.D. Ill. Aug. 18, 2003) (declining to dismiss for failure to exhaust when the plaintiff filed his suit at least 20 months after submitting his grievance and received no response); *Smith v. Boyle*, No. 02-cv-2788, 2003 WL 174189, at *3 (N.D. Ill. Jan. 27, 2003) (declining to dismiss for failure to exhaust when the plaintiff filed his lawsuit seven months after submitting his unanswered grievance); *Whitmore v. Hurley*, No. 00-cv-7879, 2002 WL 2012469, at *5 (N.D. Ill. Aug. 30, 2002) (denying summary judgment for failure to exhaust when the plaintiff filed his lawsuit at least one year after submitting his initial grievance, which officials never answered).

passed, "the administrative process is no longer 'available' and the prisoner may start the litigation." *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004) (holding that dismissal for failure to exhaust was proper even though the ARB did not respond to the plaintiff's grievance within 60 days as the regulations provided, because the ARB was reasonable in making its decision within six months). The Court rejects Cross's argument that the IDOC administrative remedies were unavailable to him merely because the prison responded to his October 2017 Grievances one month late.

Cross was required to appeal the denial of his October 2017 Grievances to the ARB in order to fully exhaust his remedies. Ill. Admin. Code tit. 20, § 504.850(a). He did so on February 8, 2018, several days after filing his original complaint in this case. (DSOMF, Ex. 2 at ARB000032.) He received ARB's formal denial the following month, on March 27, 2018. (*Id.*) At that point, Cross had seen his October 2017 Grievances through the entire administrative procedure. But because he did not do so prior to filing this suit, Cross failed to exhaust his remedies. *See Mlaska*, 428 F. App'x at 645.

The Court finds that Cross also failed to properly exhaust his administrative remedies with respect to his December 2017 Grievance. When a CAO denied the grievance as a nonemergency and directed Cross to file it in the normal manner in accordance with title 20, § 504.840(c) of the Illinois Administrative Code, Cross instead submitted it directly to the ARB. (PRDSOMF ¶ 11.) The ARB directed Cross to submit his December 2017 Grievance again through the nonemergency procedure, but there is nothing in the record to suggest that he did. (*Id.*) To successfully exhaust his remedies, Cross had to follow the IDOC administrative rules exactly. *See Brengettcy*, 423 F.3d at 682. The undisputed facts show that he did not do so with respect to his December 2017 Grievance.

Because Cross failed to exhaust his administrative remedies as to his October 2017 and December 2017 Grievances, Dr. Aguinaldo's motion for summary judgment is granted.[5]

## CONCLUSION

For the foregoing reasons, Dr. Aguinaldo's motion for summary judgment is granted and Cross's claims against him are dismissed without prejudice. (Dkt. No. 40); *see Fluker v. County. of Kankakee*, 741 F.3d 787, 791 (7th Cir. 2013) ("[D]ismissals under § 1997e(a) for failure to exhaust must be without prejudice." (internal citations omitted)).

ENTERED:

Dated: November 30, 2020

_____

Andrea R. Wood
United States District Judge

---

[5] Though not dispositive in its reasoning, the Court notes that Cross has previously filed numerous other § 1983 cases in this District against prison officials, in one of which the defendants asserted failure to exhaust as an affirmative defense. (*See* Answer to Compl. and Affirmative Defenses at 6, *Cross v. Dart*, 15-cv-03903 (N.D. Ill. June 1, 2016), Dkt. No. 17.) Cross has not and could not plausibly argue that he was unaware of the grievance procedures and the consequences of failing to exhaust them.